## PACE *v.* NEELY.

When the superior court by means of an equitable petition has obtained jurisdiction of a case in which a decree that the plaintiff is the rightful owner of land is sought, an injunction should, on application therefor by the plaintiff by a proper amendment, be granted to restrain, pending the determination of the equitable petition, proceedings instituted after the filing thereof by the defendant, against the plaintiff, to distrain for rent and to evict the latter from the premises, when it appears that the petition was brought in good faith, and under its allegations was apparently based on good grounds.

Argued May 20, — Decided July 19, 1901.

Petition for injunction.    Before Judge Brinson.    Burke superior court.    February 21, 1901.

The parties to this case entered into the following contract:

"Georgia, Burke County.. . This contract, made and entered into this the 5th day of July, 1899, between R. C. Neely, landlord, and Mrs. Mattie O. Pace, tenant, witnesseth that the said R. C. Neely agrees to rent to Mrs. Pace his place known as the Cowart place, for the space of ten years, commencing January 1st, 1900, and ending January 1st, 1910, for ten bales middling lint-cotton weighing 500 pounds each, ginned, packed, and delivered to said Neely at Waynesboro, Ga.    Said rent shall be payable, five bales on October the 1st, and five bales on November 1st, of each year of said lease.    And Mrs. Pace shall, at the request of said Neely, give him each year rent for the above 5,000 pounds of cotton; and should she fail so to do or to pay said rent promptly when due, then Neely shall at his option void this contract; but should she well and truly carry out the promises of this lease, then she shall have the privilege at any time, on or before January 1st, 1903, of buying said place by making said Neely a cash payment of $500, and giving notes for the balance of the amount agreed upon, in five annual equal payments, the price agreed upon being $6.50 per acre, and the land being 457 acres, more or less; all deferred payments to bear interest at the rate of eight per cent. per annum.    Upon receipt of cash and notes said Neely is to give Mrs. Pace a bond for title, to make deed when said notes are paid in full."

On October 1, 1900, Mrs. Pace brought her petition praying that Neely be decreed to execute and deliver to her his bond for titles to the land described in the foregoing contract.    She alleged that, in accordance with its terms, she did, on September 24, 1900, avail herself of the option therein granted, and offered to Neely the sum of $500 and the notes as provided in the contract; that he refused to accept said money as part of the purchase-price of the land, and to accept the notes, insisting that he had a right, under the contract, to collect the value of ten bales of cotton as rent, for the year 1900, and that Mrs. Pace was obliged to pay, not only the ten bales of cotton, but also an additional $500, before she was entitled to the bond for titles.    She tenders and pays into court the $500 and the notes which she offered to Neely, which she avers is the full value

of the ten bales of cotton due under the contract, if it be held that Neely is entitled to the same as rent.

On the day next after that on which this petition was filed, Neely sued out a distress warrant against Mrs. Pace, in the county court, for $493.75 as rent of the land referred to in the contract. She filed a counter-affidavit and gave bond. Neely demurred to the counter-affidavit, and the demurrer was sustained by the county court; whereupon Mrs. Neely carried the case to the superior court, where it is pending. On January 3, 1901, Neely caused to be issued a warrant to evict Mrs. Pace as a tenant holding over. On January 7, she filed her petition alleging as follows: Under the circumstances of the transaction between herself and Neely, she did not understand that she was obliged to pay the rent for the year 1900, because she had elected, prior to October 1, to purchase the property upon the terms agreed upon between her and Neely. Before the tender of September 24, she occupied the premises as his tenant, with the right to purchase the property; but after said tender was made that relation ceased, and the relation between them became that of vendor and vendee. When the contract was made the property was worth from $4.50 to $5 per acre, while the price charged her in the contract was $6.50 per acre. Neely had not owned the place for more than a year or two, and had purchased it at about $3 per acre. The real object of the contract was to induce her to buy the place, and for that reason he rented to her on the long time of ten years. Her husband represented her in the negotiations with Neely, her husband being a man of fair education but not at all versed in the law; while Neely is a merchant of great experience, has drawn many legal documents, and knows the full effect thereof. Neely drew the contract in question; and as drawn it does not carry out the understanding between the parties, in that it does not specifically state that if petitioner buys the property during the first year she is not to pay rent. The understanding between petitioner and Neely was that she could buy the property at any time before January 1, 1903, without the payment of rent for the year in which the part payment of the purchase-money was made. Petitioner understood that this was incorporated in the contract by the expression, "have the privilege at any time, on or before January 1, 1903, of buying said place," and if this was not given petitioner it was entirely the fault of Neely; for he knew when he made

the contract that she expected to buy the property. The amount of rent claimed by him is excessive, because, if liable as a tenant to pay any amount, she would be liable only for the period from January 1 to September 24, or for about three fourths of a year; and because, when the distress warrant was sued out, claim was made for the whole 5,000 pounds of rent cotton, when at that time only half thereof was due, there being nothing in the contract making the whole amount due in case that due on October 1 is not paid promptly; and because cotton was not worth as much on November 1 as on October 1, and petitioner would be chargeable only with the value of 2,500 pounds of cotton on October 1, or $246.84, and 2,500 pounds on November 1, or $212.50, when in fact the amount of $493.75 covers the value of the cotton as of October 1, a sum in excess of what petitioner is required to pay. From the time of the making of the contract petitioner had determined to purchase the property and make it her home. In view thereof she has gone to great expense in the purchase of mules, implements, and outfit, besides a large expense in clearing up property and permanently improving the same, the greater part of which will be a loss to her if she be forced to give up the land. In order to preserve her rights and to prevent a multiplicity of suits, she tenders and pays into court, to be disposed of by decree in this case, the $493.75 claimed by Neely as rent, she being willing at all times to pay the rent if the court holds that she is bound to do so under the contract, which she denies, and in every other way to comply with the terms of the contract. She has all along endeavored in good faith to do this, and to pay Neely everything that she legally owed him as tenant and purchaser of the property, she having been induced to enter into both relationships pursuant to the persuasion and promises of Neely. On September 24, 1900, she addressed to Neely a letter, to which she has received no reply, saying: "I herewith tender you $500.00, and my five promissory notes, in compliance with our contract made and entered into at Waynesboro, Ga., on the 5th day of July, 1899. . . If these notes are not in such form as you wish, or deemed necessary under said contract, I now express my willingness and desire to sign such notes as you wish, said notes to comply with the conditions of said contract." The effort of Neely to distrain for rent and to dispossess her has put her to unnecessary trouble and expense; and if she were forced to yield possession of the property it

would greatly damage her, prevent her from carrying on farming operations for 1901, and entail a great loss in the property she had purchased for that purpose. She prays: for temporary injunction against the distraint and eviction proceedings, pending the determination of the issues arising under her petition and amendment; that Neely be required to make to her a bond for titles as called for by the contract; and, in default of so doing, to recover damages for its breach by him.

Neely demurred on the grounds, that no cause of action is set forth; that the facts alleged do not authorize the grant of the extraordinary relief prayed for; that plaintiff has a complete and ample remedy at law; that she seeks to add to or vary the terms of a written contract by parol; that the tender made by her is insufficient to protect him or preserve his rights as owner or landlord; that the amount tendered covers only the principal sum due for rent, with nothing for interest or cost; that it does not indemnify the landlord for the holding over by the tenant during 1901; and that no sufficient reason appears why a tender in this proceeding, even if sufficient, should be substituted for the plain statutory provision. Neely also filed his answer, denying the main allegations of the petition and amendment, and setting up the following: The contract sets out the entire agreement between the parties. Prior thereto defendant had rented the land to plaintiff at the annual rental named in the contract, under a verbal contract in which no option to purchase was given. Afterwards, when they came to reduce the contract to writing, Mrs. Pace through her husband requested defendant to name a purchase-price and to give her an option, which he did by the written contract before set forth. The annual rental provided for therein was very moderate, being the usual rental for a five-horse farm, and defendant could easily have rented to others at the rental so named. Therefore the option was not given to induce plaintiff to rent the land. But defendant was induced to grant said option upon the verbal promise of Pace that Mrs. Pace would purchase all farm supplies for herself, her croppers and tenants, from defendant, who was a merchant engaged in furnishing farm supplies, and who anticipated that he would realize from said advances the usual profits. There was no other consideration for the option. But plaintiff and her agent carried said trade elsewhere, and the consideration for the option failed in

toto.    The price named in the option was only a fair price for the
land, and did not exceed its true value at the time.    Notwithstand-
ing all this, defendant would willingly have sold the property. to
Mrs. Pace at any time as stipulated in the contract, had she endeav-
ored in good faith to comply with its terms according to its reason-
able construction or intendment; but she undertook to reap an un-
fair and unconscionable advantage of defendant, by a technical
construction under which she claimed that, after enjoying the use
of his plantation for the farming season of 1900, after the maturity
of the crop, and after a large portion of it had been harvested and
disposed of, she was entitled, without paying any rent, to tender
the first payment on the purchase-price of the land under the op-
tion and obtain bond for title.    Before the tender of September 24,
he was informed of her purpose to refuse to pay rent for 1900.
On that date he presented rent notes to her for execution in con-
formity to the terms of the contract, which she declined to sign.
She could not repudiate her obligation in the contract and at the
same time claim the benefit of the option.    The tender, therefore,
not having been made in good faith, and she having failed to com-
ply with her contract and having put him on notice that she did
not intend to comply with it as to the payment of rent, he was not
and is not bound to sell her the land.    When the alleged tender
was made, defendant did not know whether it was in accordance
with the contract, and declined to accept or reject it until he could
present rent notes to plaintiff for her signature, which he at once
did.    She declined to give them, and the tender was not renewed.
She had previously removed a large portion of the crop made on
the place, and was continuing to remove it, and disposing of it with-
out the consent of defendant; and therefore the rent for 1900 was
due and collectible.    Upon her failure and refusal to pay it, he de-
clared the lease at an end, as the contract provided in such con-
tingency, and notified her to vacate the premises by January 1,
1901.    Her counter-affidavit to the distraint proceedings set up
the contract before set forth, and the tender of the first payment,
and denied that under this contract she was due any sum for rent.
The counter-affidavit was dismissed on defendant's demurrer, and
judgment was entered against Mrs. Pace and the security on her
replevy bond for $493.75, with interest and costs.    Upon the is-
suance of the warrant to dispossess her, she allowed the three days

allowed her by law to expire without filing any counter-affidavit and giving bond, but instituted the present proceeding for interlocutory injunction. Whatever trouble and expense have been caused her have resulted from his effort to enforce his rights and her effort to defeat him therein.

At the hearing there was conflicting evidence by affidavits, etc., the nature of which is indicated in the foregoing statement of the contentions of the parties. The judge rendered the following decision : "Without undertaking to decide whether the plaintiff makes a case for specific performance or not, or what amount, if any, of rent should be paid by petitioner to defendant, or whether the contract be entire or severable, I am of opinion that petitioner can fully set up her defenses to the distress warrant and warrant against tenant holding over, by counter-affidavit in those actions, and that the case made is not so urgent as to justify a court of equity in enjoining said suits. Code, §§ 4902, 4915. For which reasons the prayer for injunction is denied, and the restraining order heretofore granted is dissolved." To this judgment the plaintiff excepted.

*W. K. Miller* and *W. H. Davis*, for plaintiff.
*P. P. Johnston* and *Callaway & Fullbright*, for defendant.

LITTLE, J. We reverse the ruling made by our brother of the trial bench, refusing the injunction. In his order this ruling is based on the ground that the petitioner could fully set up her defenses against the distress warrant and the warrant against her as a tenant holding over, by proceedings authorized by statute to be taken by the person against whom such processes may issue. Assuming this to be true, we yet find the circumstances of the case, as presented in the petition, call very loudly for the grant of the writ. The petitioner declares that she is not a tenant of the defendant in error, and was not at the time these processes were issued against her ; if she was not, they were, of course, improperly issued. Certain it is, that prior to their issue the plaintiff in error had instituted an action to compel the specific performance by the defendant in error of a contract which in terms gives her an option to terminate her tenancy and become the legal owner of the land on certain conditions. The contract on which that petition is based, the execution of which is not denied, seems to be sufficiently

explicit to afford a basis for the decree sought. At the time it was filed no injunction was necessary to protect her rights, as no action had then been taken seeking to fix her status as a tenant. She is entitled to have her relation to this land fixed and determined, and that, too, without a multiplicity of suits against her. On the other hand, the defendant in error is entitled to be placed in a safe and secure position as to the rental value of the land, should it ultimately be determined that plaintiff has not properly exercised the right to purchase, which is clearly given by the contract. The superior court having acquired jurisdiction in the case on an equitable petition, all collateral issues affecting the rights of the parties should be brought into it, and these rights settled by a single decree, when the facts which determine the right shall have been ascertained in the proper manner. The judgment of the court below is                    *Reversed. All the Justices concurring.*